UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

TITANESS LIGHT SHOP, )
)
      Plaintiff, ) 3:12-CV-0620-LRH-VPC
)
v. )
) ORDER
SUNLIGHT SUPPLY, INC., et al., )
)
      Defendants. )

Before the court is defendants Sunlight Supply, Inc. ("Sunlight") and IP Holdings, Inc.'s ("IP Holdings") (collectively "defendants") motion for a preliminary injunction against plaintiff Titaness Light Shop, LLC ("TLS"). Doc. #23.[1] TLS filed an opposition (Doc. #24) to which defendants replied (Doc. #31).

**I.    Parties and Factual Background**

Defendant Sunlight is a distributor of specialty gardening supplies. Since 1995, Sunlight has been an industry leader in the indoor gardening industry offering over 5,000 different products. Defendant IP Holdings is the holding company for Sunlight's various intellectual properties. Defendants, through IP Holdings, are the owners of the mark TITAN CONTROLS.[2] That mark is

---

[1] Refers to the court's docketing number.

[2] Federal Registration No. 3604100. A copy of the registration is attached as Exhibit A-1 to the motion for a preliminary injunction. Doc. #23, Exhibit A-1.

used to market controller devices that are used in conjunction with other indoor gardening equipment (like grow lights, fans, etc.) to control lighting and environmental conditions, and has been used by defendants since 2008.

Plaintiff TLS is a U.S.-based manufacturer specializing in designing, manufacturing, and selling sophisticated indoor grow lighting systems and lighting components. In September 2012, TLS began marketing its lighting products under the TITANESS service mark along with individual trademarks for each product. On October 16, 2012, TLS applied for a federal trademark for the TITANESS mark. In response, defendants submitted a letter of protest to the Commissioners for Trademarks at the United States Patent and Trademark Office.

On November 20, 2012, plaintiff TLS filed the underlying complaint against defendants seeking declaratory relief that: (1) its TITANESS mark does not infringe defendants' TITAN CONTROLS mark; and (2) that defendants' TITAN CONTROLS mark is invalid. Doc. #1. In response, defendants filed an answer alleging four counterclaims: (1) trademark infringement in violation of the Lanham Trademark Act of 1946 ("the Lanham Act"), 15 U.S.C. § 1114; (2) false designation or origin and false description in violation of the Lanham Act, 15 U.S.C. § 1125(a); (3) trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1125(c); and (4) common law trademark infringement. Doc. #15. Thereafter, defendants filed the present motion for a preliminary injunction seeking an order barring TLS from using any marks that indicate an association with the defendants and their products, including the TITANESS mark. Doc. #23.

**II.     Legal Standard**

A court may grant a preliminary injunction only upon a showing that: (1) the petitioner is likely to succeed on the merits of his complaint; (2) irreparable harm will result in the absence of an injunction; (3) the balance of equities favors an injunction; and (4) an injunction is in the public's interest. *Winters v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 376 (2008) (citations omitted). Further, a preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that [the moving party] is entitled to such relief." *Id.* (*citing Mazurek v. Armstrong*,

1  520 U.S. 968, 972 (1997) (per curiam)).

## III. Likelihood of Success on the Merits

"The sine qua non of [a court's injunctive] inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *New Comm Wireless Services, Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002). However, a plaintiff may be awarded a preliminary injunction by establishing "that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor" so long as the plaintiff satisfies the additional *Winters* factors. *Alliance for Wild Rockies v. Cottrell*, 622 F.3d 1045, 1050 (9th Cir. 2010); *see also, Dept. of Parks and Recreation for the State of California v. Bazarr Del Mundo, Inc.*, 448 F.3d 1118, 1123 (9th Cir. 2006).

The Lanham Act, "provides national protection of the ability of consumers to distinguish among competing producers." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002). "To prevail on a claim of trademark infringement under the Lanham Act, the movant must establish that he is (1) the owner of a valid, protectable mark, and (2) that the alleged infringer is using a confusingly similar mark." *Russell Road Food and Beverage v. Spencer*, 2013 U.S. Dist LEXIS 11034, *5 (D. Nev. 2013); *see also Reno Air Racing Association v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006).

In their motion for a preliminary injunction, defendants argue that they are likely to succeed on the merits of their counterclaims under the Lanham Act because: (1) TITAN CONTROLS is a protectable mark; and (2) TLS's use of the competing TITANESS mark is likely to cause consumer confusion. *See* Doc. #23. Each element is addressed below.

### A. Valid Mark

Generally, "[a] certificate of registration of a mark upon the principal register provided by this Act shall be prima facie evidence of the validity of the registered mark." 15 U.S.C. § 1057(b); *see also*, 15 U.S.C. § 1115(a); *see also, Reno Air Racing Assoc.*, 452 F.3d at 1135. However, "[t]he

3

presumption of validity of a registered mark may be overcome by a preponderance of the evidence, where the [opposing party] presents some evidence of invalidity." *Signeo USA, LLC v. Sol Republic, Inc.*, 2012 U.S. Dist. LEXIS, 79356, \*16 (N.D. Cal. 2012). In analyzing an invalidity challenge, the court draws any inference from the facts in favor of the party asserting the validity of its registered mark. *Id.*

Initially, the court finds that defendants are entitled to a presumption of trademark validity because TITAN CONTROLS is a federally registered mark. *See* 15 U.S.C. § 1057(b). In its opposition to the motion for a preliminary injunction, TLS argues the TITAN CONTROLS mark is invalid because defendant IP Holdings filed a voluntary amendment to its trademark registration application changing its date of first use from January 1, 2008, to June 1, 2008 - after the date the trademark registration application was filed on May 2, 2008. However, TLS's registration application challenge is insufficient to overcome the mark's presumption of validity. When filing the initial registration application for TITAN CONTROLS, IP Holdings filed a Section 1(b) Intent to Use application. An Intent to Use application necessarily means that IP Holdings was not claiming use of the mark at the time it filed the application in May 2008, but that it intended to use the mark (and did use the mark) in the near future. IP Holdings then filed the required statement of actual use in January 2009. This correction does not make the otherwise valid trademark invalid. Therefore, the court finds that TITAN CONTROLS is a valid, protectable mark. Because the court has found that defendants have a protectable mark, the court must now determine whether there is a likelihood of confusion between defendants' TITAN CONTROLS mark and TLS's TITANESS mark.

**B. Likelihood of Confusion**

"The core element of trademark infringement is whether customers are likely to be confused about the source or sponsorship of the products." *Reno Air Racing Assoc.*, 452 F.3d at 1135 (citing *Interstellar Starship Services, Ltd. v. Epix, Inc.*, 304 F.3d 936, 941 (9th Cir. 2002). "The test for likelihood of confusion requires the fact finder to determine whether a reasonably prudent

consumer in the marketplace is likely to be confused as to the origin of the good or service bearing on of the marks." *Survivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005). In determining likelihood of confusion, courts use an eight-factor test, known as the *Sleekcraft* factors, to guide the court's analysis and assessment. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). The eight *Sleekcraft* factors are: "(1) the strength of the mark; (2) proximity or relatedness of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the degree of care customers are likely to exercise in purchasing the goods; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion into other markets." *Id.*

### i. Strength of the Mark

The first *Sleekcraft* factor is the strength of the mark sought to be protected. *Sleekcraft*, 599 F.2d at 348. The scope of trademark protection that is given to a mark "depends upon the strength of the mark, with stronger marks receiving greater protection than weak ones." *R&R Partners, Inc. v. Tovar*, 447 F. Supp. 2d 1141, 1151 (D. Nev. 2006); *see also General Motors Co. v. Let's Make a Deal*, 223 F. Supp. 2d 1183, 1194 (D. Nev. 2002) ("[T]he stronger a mark - meaning the more likely it is to be remembered and associated in the public mind with the mark's owner - the greater the protection it is accorded by the trademark laws."); *Sleekcraft*, 599 F.2d at 350 (holding that a weak mark is entitled to only a restricted range of trademark protection). "The strength of the trademark is evaluated in terms of its conceptual strength and commercial strength." *JL Beverage Company v. Beam, Inc.*, 2012 U.S. Dist LEXIS 137076, *13 (D. Nev. 2012).

"Trademarks may be sorted into five categories of increased strength and distinctiveness: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *General Motors Co.*, 223 F. Supp. 2d at 1194. "Identifying whether a mark is generic, descriptive, suggestive, arbitrary or fanciful, however, is only the first step of the inquiry. The second step is to determine the strength of this mark in the marketplace." *JL Beverage Company*, 2012 U.S. Dist LEXIS 137076, at *19. "Commercial strength is based on actual marketplace recognition, and thus advertising

expenditures are often a sound measure of commercial success." *Id*. at *20.

Here, the parties dispute whether TITAN CONTROLS is a descriptive or suggestive mark. A descriptive mark is one that describes the quality or features of the product while a "suggestive mark conveys an impression of a good but requires the exercise of some imagination and perception to reach a conclusion as to the product's nature." *JL Beverage Company*, 2012 U.S. Dist LEXIS 137076, *15. Descriptive marks "will be protected only when secondary meaning is shown," *Sleekcraft*, 599 F.2d at 349, while suggestive marks will be protected without proof of secondary meaning, *JL Beverage Company*, 2012 U.S. Dist LEXIS 137076, *15.

Although the distinction between descriptive and suggestive marks may be inarticulable, and often confusing, several criteria offer guidance. "The primary criterion is the imaginativeness involved in the suggestion; that is, how immediate and direct is the thought process from the mark to the particular product." *Sleekcraft*, 599 F.2d at 349. "A secondary criterion is whether granting the trademark owner a limited monopoly will in fact inhibit legitimate use of the mark by other sellers." *Id*. A third criterion "is whether the mark is actually viewed by the public as an indication of the product's origin or as a self-serving description of it." *Id*.

In their motion, defendants argue that TITAN CONTROLS is a suggestive mark because it requires consumers to use their imagination to understand the mark's significance in relation to the product. Defendants contend that TITAN is another name for Helios, the Greek god of the sun, and their indoor gardening products replicate sunlight. Thus, according to defendants, a reasonable consumer would need to make an imaginative leap to see the TITAN mark and understand that the marked products relate to indoor gardening equipment.

In opposition, TLS contends that TITAN CONTROLS is a descriptive mark and the court agrees. Despite defendants' claim that TITAN specifically refers to the Greek god Helios, the court finds that a reasonable consumer is more likely to associate the term TITAN with its more general definitions. The term TITAN is defined as "any of a family of giants in Greek Mythology," - not just Helios himself - or "one that stands out for greatness or achievement." *Merriam-Webster's*

6

*Collegiate Dictionary* (Springfield, Mass.: Merriam-Webster, Inc., 2008) (11th ed.) at 1311. The court finds it likely that a reasonable consumer would recognize the term TITAN, in the context of defendants' products, as being used in the "standing out for greatness or achievement" sense.

Further, "under the anti-dissection rule, the validity and distinctiveness of a composite trademark is determined by viewing the trademark as a whole, as it appears in the marketplace. This is because whether a mark suggests or describes the goods or services of the trademark holder depends, of course, upon what those goods or services are." *JL Beverage Company*, 2012 U.S. Dist LEXIS 137076, *15-16. Although defendants focus solely on the term TITAN in their mark analysis, the additional defining term CONTROLS must be used in conjunction with TITAN to determine the significance and strength of the trademark. Reviewing the trademark in its entirety, the court finds that the mark TITAN CONTROLS is likely to be understood by a reasonable consumer to mean "really great controls" which is a descriptive, rather than suggestive mark.

Because the court has found that TITAN CONTROLS is a descriptive mark, defendants are only entitled to trademark protection if the mark has acquired secondary meaning. To determine whether a descriptive mark has acquired secondary meaning, courts consider: "(1) whether actual purchasers of the product bearing the claimed trademark associate the trademark with the producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark, and (4) whether use of the claimed trademark has been exclusive." *Dept. of Parks and Recreation*, 448 F.3d at 1128 (internal quotations omitted).

Here, the limited record before the court establishes that TITAN CONTROLS has acquired secondary meaning in the indoor gardening marketplace. First, the commercial success of the TITAN CONTROLS marked products, in excess of $10 million in sales, establishes that consumers associate TITAN CONTROLS with quality products in the indoor gardening industry. Second, defendants engage in extensive advertising on the TITAN CONTROLS marked product line. In fact, defendants established a separate TITAN CONTROLS website for product advertising, distinct from defendant Sunlight's general company website. Third, the TITAN CONTROLS mark

7

has been used since 2008. Finally, defendants' use of the trademark within the indoor gardening market has been exclusive. Therefore, even though TITAN CONTROLS is a descriptive mark, the court finds that it has achieved sufficient secondary meaning to warrant trademark protection. Accordingly, this factor favors defendants and the granting of an injunction.

### ii. Proximity or Relatedness of the Goods

The second *Sleekcraft* factor is the proximity or relatedness between the two goods in the market. *Sleekcraft*, 599 F.2d at 348. "If goods are closely related, consumers are more likely to be confused by the use of similar marks and will mistakenly assumed there is an association between the producers of the goods when no such association exists." *R&R Partners*, 447 F. Supp. 2d. at 1152. "The more likely the public is to make such an association, the less similarity in the marks is requisite to a finding of likelihood of confusion." *Id*. "Thus, less similarity between the marks will suffice when the goods are complementary, the products are sold to the same class of purchasers, or the goods are similar in use and function." *Id*. (quoting *Sleekcraft*, 599 F.2d at 348, n.10).

Here, the trademarked goods are complementary goods, sold within the same industry and to the same class of consumers. Additionally, defendants' TITAN CONTROLS marked products are designed to be plug-and-play style controllers. This means that they are designed in such a way that other products, including TITANESS marked grow lights can be used with the controller without additional components or products. Based on this design feature, the court finds that the public is likely to mistakenly assume there is an association between these goods, though no such association exists. Therefore, the court finds that this factor weighs in favor of defendants.

### iii. Similarity of the Marks

The third *Sleekcraft* factor is the similarity of the two marks. *Sleekcraft*, 599 F.2d at 348. The likelihood of confusion becomes more likely as the similarity between two marks becomes greater. *See R&R Partners*, 447 F. Supp. 2d. at 1152. There are three factors courts may consider in determining the similarity of the marks: "(1) marks should be considered in their entirety and as they appear in the marketplace; (2) similarity is best adjudged by appearance, sound, and meaning;

and, (3) similarities weigh more heavily than differences." *Id*. Further, "[a] court does not consider the similarity of the marks in the abstract, but rather in light of the way the marks are encountered in the marketplace and the circumstances surrounding the purchase." *Reno Air Racing Assoc.*, 452 F.3d at 1137.

Initially, the court notes that the term TITANESS is simply the feminized version of TITAN, and as such, is a similarly sounding mark. *See e.g., Sleekcraft*, 599 F.2d at 351-352 ("Sound is also important because reputation is often conveyed word-of-mouth. We recognize that the two sounds can be distinguished, but difference is only a small part of one syllable. . . Slight differences in the sound of trademarks will not protect the infringer."). Although TITAN CONTROLS is a two-word mark, the sound similarity between TITAN and TITANESS, when viewed in the limited marketplace of the indoor gardening industry, is significant to the court. Therefore, the court finds that these competing marks are sufficiently similar such that a reasonable consumer is likely to be confused by the competing marks. Accordingly, this factor falls in favor of defendants.

### iv. Evidence of Actual Confusion

The fourth *Sleekcraft* factor is evidence of actual consumer confusion in the marketplace. *Sleekcraft*, 599 F.2d at 348. "Evidence that use of two marks has already led to confusion is persuasive proof that future confusion is likely." *R&R Partners*, 447 F. Supp. 2d. at 1153.

In their motion, defendants concede that they do not have any evidence of actual confusion at this time. However, "[b]ecause of the difficulty in garnering such evidence, the failure to prove instances of actual confusion is not dispositive." *Sleekcraft*, 599 F.2d at 353. Therefore, because TLS is new to the market and evidence of confusion is not readily available, the court finds that this factor is neutral.

### v. Marketing Channels Used

The fifth *Sleekcraft* factor is the similarity of the marketing channels used by the parties. *Sleekcraft*, 599 F.2d at 348. "Convergent marketing channels increase the likelihood of confusion.

9

This factor receives greater weight when the products are sold in niche marketplaces and less weight when the products share a ubiquitous marketing channel such as the online marketplace." *Signeo USA, LLC*, 2012 U.S. Dist. LEXIS, 79356, at *33.

Here, the marketing channels used by the parties, namely trade shows and the two main industry publications - *Maximum Yield Industry News* and *Maximum Yield USA* - are identical and, therefore, this factor weighs in favor of defendants.

### vi. Degree of Care used in the Purchase of Goods

The sixth *Sleekcraft* factor is the degree of care user by purchasers in purchasing the goods. *Sleekcraft*, 599 F.2d at 348. The standard used is that of the typical buyer exercising ordinary caution. *R&R Partners*, 447 F. Supp. 2d. at 1156. "Although the wholly indifferent may be excluded, the standard includes the ignorant and the credulous." *Sleekcraft*, 599 F.2d at 353. However, "[w]hen the buyer has expertise in the field, a higher standard is proper though it will not preclude a finding that confusion is likely. Similarly, when the goods are expensive, the buyer can be expected to exercise greater care in his purchases; again, though, confusion may still be likely." *Id*. Thus, "[a]s a rule of thumb, consumers are expected to be more discerning and less easily confused when the products in question are expensive items." *General Motors Co.*, 223 F. Supp. 2d at 1194.

Here, it is undisputed that both companies market to the indoor gardening community. Although their respective products are not exactly the same, they are complementary goods. Thus, even a sophisticated consumer would likely be confused into believing that the TITANESS lighting products are to be used with TITAN CONTROLS controllers and are likely to purchase both products together. Therefore, the court finds that this factor weighs in favor of defendants.

### vii. Intent in Selecting the Mark

The seventh *Sleekcraft* factor is the allegedly infringing party's intent in selecting the allegedly infringing mark. *Sleekcraft*, 599 F.2d at 348. When an alleged infringer knowingly adopts a mark similar to another's, a court may presume that the defendant chose that mark for the purpose

10

of deceiving the public. *See R&R Partners*, 447 F. Supp. 2d. at 1156.

Here, there is no evidence of TLS's intent in choosing the TITANESS mark. Based on the lack of evidence of intent in this action, the court finds that this factor weighs in favor of TLS.

### viii. Likelihood of Expansion into Other Markets

The final *Sleekcraft* factor is the parties' likelihood of expanding into other markets using the same mark. *Sleekcraft*, 599 F.2d at 348. "Inasmuch as a trademark owner is afforded greater protection against competing goods, a strong possibility that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." *R&R Partners*, 447 F. Supp. 2d. at 1155.

The court finds that this factor is relatively unimportant as the parties are already admittedly marketing their products in the same market.

### ix. Conclusion

In conclusion, the majority of *Sleekcraft* factors in this action weigh in favor of defendants. Thus, the court finds that there is a likelihood of consumer confusion between defendants' TITAN CONTROLS mark and TLS's TITANESS mark. Therefore, defendants have satisfied both elements of a trademark infringement claim under the Lanham Act. Because the court has found that defendants are likely to succeed on their claims under the Lanham Act, the court must analyze the remaining *Winters* factors. *See Winters*, 129 S. Ct. at 376.

**IV.     Irreparable Harm**

A plaintiff must show that an irreparable injury is *likely*, not merely *possible*, before a preliminary injunction may be issued. *American Trucking Ass'ns v. City of Los Angeles*, F.3d 1046, 1052 (9th Cir. 2009) (reversed on other grounds *Am. Trucking Ass'ns v City of Los Angeles*, 596 F.3d 602 (9th Cir. 2010)) (emphasis added). "Issuing an [injunction] based only on a possibility of irreparable harm is . . . an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 129 S. Ct. at 375-76. Further, "[h]arm is irreparable for the purposes of a preliminary injunction if it cannot be redressed by a

11

legal remedy or an equitable remedy following trial." *Russell Road Food and Beverage*, 2013 U.S. Dist LEXIS 11034, *11.

Initially, defendants argue that once the moving party demonstrates a likelihood of success, irreparable harm may be presumed in a trademark infringement action. *See General Motors Co.*, 223 F. Supp. 2d at 1196-1197 (""If a plaintiff has demonstrated a likelihood of prevailing on the merits of their trademark infringement or unfair competition claims, irreparable harm may be presumed."). However, "[i]t is unlikely that trademark infringement gives rise to a presumption of irreparable harm in light of the Supreme Court's opinion in *eBay, inc. v. MercExchange, LLC*, 547 U.S. 388 (2006). There, the Court held that proof of patent infringement does not raise a presumption of irreparable harm, 547 U.S. at 394, and the Ninth Circuit has extended this reasoning to copyright infringement, *Flexible Lifeline Systems, Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 1000 (9th Cir. 2011). A similar logic applies to trademark claims." *Russell Road Food and Beverage*, 2013 U.S. Dist LEXIS 11034, *11. Therefore, defendants have to actually show irreparable harm.

Here, defendants contend that their goodwill is harmed by TLS's use of a similar mark in a very limited marketplace. The court agrees. An irreparable injury exists when continuing mark infringement will result in a loss in the trademark owner's reputation and goodwill. *See Apple Computer, Inc. v. Formula Int'l Inc.*, 725 F.2d 521, 526 (9th Cir. 1984).

**V.     Balance of Equities**

In seeking a preliminary injunction, the moving party must suffer a degree of hardship that outweighs the hardship placed upon the allegedly infringing party by the injunction. *See Topanga Press, Inc. v. City of Los Angeles*, 989 F.2d 1524, 1528 (9th Cir. 1993). "An injunction may not issue unless the balance of hardships tips in favor of the moving party. A court must remain free to deny a preliminary injunction, whatever be the showing of likelihood of success, when equity in light of all the factors so requires." *JL Beverage Company*, 2012 U.S. Dist LEXIS 137076, *47. In a trademark infringement action, factors to be considered include the effect on the trademark

12

1  owner's market share, business reputation, and goodwill, as well as the parties' relative size. *See*
2  *Progressive Games, Inc. v. Shuffle Master, Inc.*, 69 F.Supp.2d 1276, 1287 (D. Nev. 1999) (citations
3  omitted).

4      Here, the court finds that the balance of equities favors defendants as the trademark owners
5  because TLS is allegedly infringing a federally registered trademark. *See Krause Interm, Inc. v.*
6  *Reed Elsevier, Inc.*, 866 F. Supp. 585, 586 (D. D.C. 1994). Further, the court finds that TLS will
7  suffer minimal harm by issuance of an injunction because an injunction will not preclude TLS from
8  selling its lighting products. Rather, the issuance of an injunction will only prevent TLS from
9  labeling their products with their TITANESS service mark.

10 **VI.**    **Public's Interest**

11     Before granting an injunction the court must determine that an injunction is in the public's
12 interest. *Winter*, 129 S. Ct. at 375-76. "In the trademark context, courts often define the public
13 interest at stake as the right of the public not to be deceived or confused." *JL Beverage Company*,
14 2012 U.S. Dist LEXIS 137076, *48-49.

15     Here, the court finds that an injunction protects the public interest in avoiding consumer
16 confusion from competing uses of a federally registered trademark. *See e.g., Autoskill Inc. v. Nat'l*
17 *Educ. Support Systems*, 994 F.2d 1476, 1499 (10th Cir. 1993).

18 **VII.**    **Bond**

19     Federal Rule of Civil Procedure 65 requires that defendants post security as the court deems
20 proper to protect TLS if it is later determined that an injunction should not have been issued. FED.
21 R. CIV. P. 65(c). While the language of the rule is mandatory, the court has wide discretion whether
22 to set a bond, and how much. *See Corrigan Dispatch Co. v. Casa Guzman*, 569 F.2d 300, 303 (5th
23 Cir. 1978); *Carillon Importers, LTD. v. Frank Pesce Int'l Group Limited*, 112 F.3d 1125 (11th
24 Cir. 1997).

25     Here, the court finds that a bond in the amount of five thousand dollars ($5,000.00) is
26 appropriate in this action in light of the court's finding on defendants' likelihood of success on their

claims under the Lanham Act.

IT IS THEREFORE ORDERED that defendants' motion for a preliminary injunction (Doc. #23) is GRANTED. Plaintiff Titaness Light Shop, LLC is ENJOINED from using any mark that indicates an association with defendants Sunlight Supply, Inc. and IP Holdings, Inc., including, without limitation, the terms "TITAN CONTROLS" and "TITANESS" or any colorable imitation thereof.

IT IS FURTHER ORDERED that defendants shall post a bond with the clerk of court in the amount of five thousand dollars ($5,000.00).

IT IS SO ORDERED.

DATED this 29th day of August, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE