UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TITANESS LIGHT SHOP,<br><br>        Plaintiff,<br><br>v.<br><br>SUNLIGHT SUPPLY, INC., et al.,<br><br>        Defendants. | 3:12-CV-0620-LRH-VPC<br><br>ORDER |

    Before the court is plaintiff Titaness Light Shop, LLC's ("TLS") motion to reconsider the court's order granting defendants Sunlight Supply, Inc. ("Sunlight") and IP Holdings, Inc.'s ("IP Holdings") (collectively "defendants") motion for a preliminary injunction, or in the alternative, to stay the preliminary injunction pending appeal. Doc. #42.[1] Defendants filed an opposition (Doc. #47) to which TLS replied (Doc. #48).

    Also before the court is defendants' motion for an order to show cause why TLS should not be held in contempt for failure to comply with the preliminary injunction. Doc. #54. TLS filed an opposition (Doc. #55) to which defendants replied (Doc. #56).

///

///

---

[1] Refers to the court's docketing number.

I.     **Parties and Factual Background**

Defendant Sunlight is a distributor of specialty gardening supplies in the indoor gardening industry. Defendant IP Holdings is the holding company for Sunlight's various intellectual properties. Defendants, through IP Holdings, are the owners of the mark TITAN CONTROLS.[2] The TITAN CONTROLS mark is used to market controller devices that are used in conjunction with other indoor gardening equipment (like grow lights, fans, etc.) to control lighting and environmental conditions, and has been used by defendants since 2008.

Plaintiff TLS is a manufacturer specializing in designing, manufacturing, and selling sophisticated indoor grow lights and lighting components. In September 2012, TLS began marketing its lighting products under the TITANESS service mark.

On November 20, 2012, TLS filed a complaint against defendants seeking declaratory relief that: (1) its TITANESS mark does not infringe defendants' TITAN CONTROLS mark; and (2) that defendants' TITAN CONTROLS mark is invalid. Doc. #1. In response, defendants filed a motion for a preliminary injunction[3] (Doc. #23) which was granted by the court (Doc. #41). Thereafter, TLS filed the present motion for reconsideration of the court's order, or in the alternative, to stay the preliminary injunction pending appeal. Doc. #42.

II.    **Reconsideration**

A motion for reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 887, 890 (9th Cir. 2000). Rule 59(e) provides that a district court may reconsider a prior order where the court is presented with newly discovered evidence, an intervening change of controlling law, manifest injustice, or where the prior order was clearly erroneous. FED. R. CIV. P.

---

[2] Federal Registration No. 3604100. A copy of the registration is attached as Exhibit A-1 to the motion for a preliminary injunction. Doc. #23, Exhibit A-1.

[3] The preliminary injunction sought an order barring TLS from using any marks that indicate an association with the defendants and their products, including the TITANESS mark.

59(e); *see also United States v. Cuddy*, 147 F.3d 1111, 1114 (9th Cir. 1998); *School Dist. No. 1J, Multnomah County v. AcandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

In its motion for reconsideration, TLS seeks reconsideration of the preliminary injunction arguing that the court erred in its legal and factual findings. In support of its motion, TLS raises several challenges to the court's order: (1) the court erred in finding that there was irreparable harm; (2) defendants engaged in undue delay in filing the motion for a preliminary injunction; (3) the court erred in finding that there was a likelihood of confusion; (4) the court erred in finding the balance of hardships favors defendants; and (5) the court erred in finding that the public interest favored an injunction. *See* Doc. #42. The court shall address each argument below.

**A.  Irreparable Harm**

TLS argues that the court erred by finding that defendants' customer goodwill associated with its TITAN CONTROLS mark was irreparably harmed by its use of the TITANESS service mark. *See* Doc. #42. The court disagrees.

Since 2008, defendants have expended significant marketing resources to maintain an image and reputation as manufacturers whose TITAN CONTROLS marked products are not to be used for the production of illegal substances. For example, defendants require stores that sell their products to sign letters stating that they will not sell the products to anyone engaged in the production of illegal substances like marijuana, nor will they market their products in any manner that associates TITAN CONTROLS with marijuana. *See* Doc. #31, Exhibit 5. In contrast, TLS distributes its products through Discount Hydroponics, an internet based distribution company, that advertises to customers engaged in the use of illegal substances like marijuana. *See e.g.*, Doc. #31, p.8-10 (noting products marketed and sold by Discount Hydroponics including "stash jars" and marijuana related apparel). The court finds that consumer confusion between the two similar marks has and will continue to cause consumers to associate defendants' TITAN CONTROLS marked products with the production of illegal substances. This association will irreparable erode defendants' goodwill and reputation. *See Apple Computer, Inc. v. Formula Int'l Inc.*, 725 F.2d 521,

526 (9th Cir. 1984) (holding that an irreparable injury exists when continuing mark infringement will result in a loss in the trademark owner's reputation and goodwill); *see also*, *American Rena Intern. Corp. v. Sis-Joyce Intern. Co. Ltd.*, No. 12-57169, 2013 WL 3815579, *2 (9th Cir 2013) (holding that "[e]vidence of threatened loss of customers or goodwill" is sufficient for the court to find that irreparable harm will likely result in the absence of preliminary injunctive relief). Therefore, the court finds that reconsideration of the court's finding of irreparable harm is not warranted.

### B. Undue Delay

In its second argument for reconsideration, TLS argues that defendants prejudicially delayed the filing of the preliminary injunction motion. *See Russell Road Food and Beverage v. Spencer*, 2013 U.S. Dist LEXIS 11034, *4 (D. Nev. 2013) "A long delay between discovery of infringement and the preliminary injunction motion may undercut the sense of urgency associated with irreparable injury.").

Here, it is undisputed that defendants first discovered the TITANESS mark in May 2012. It is further undisputed that defendants did not file the underlying preliminary injunction motion until February 2013. However, during the interim period, defendants were in contact with TLS and attempted to resolve their issues without engaging in litigation. The court shall not punish defendants for taking a limited time to investigate their claims and trying to resolve this dispute outside of litigation.

### C. Likelihood of Confusion

TLS also argues that the court erred in finding that there was a likelihood of confusion between the TITAN CONTROLS mark and the TITANESS mark. In support of its argument, TLS offers new evidence that the United States Patent and Trademark Office ("USPTO") has granted TLS a registration for the TITANESS service mark over the objection of defendants.

The court has reviewed the documents and pleadings on file in this matter and finds that reconsideration is not warranted based solely on this new evidence. First, determinations by

4

trademark examiners are not binding upon the court. Second, there is a different evidentiary standard for determining the likelihood of confusion before the USPTO. Third, the registration for TITANESS was not for use in the indoor gardening industry. Rather, the TITANESS registration was for use in "On-Line Retail Store Services and Retail Store Services Featuring Lighting Equipment." In contrast, the TITAN CONTROLS mark was registered under electromechanical controls for use in horticulture and indoor gardening. As such, the court gives no weight to the subsequent TITANESS registration because the services claimed by TLS in its application were not in the same industry as the goods covered by TITAN CONTROLS. Therefore, the court finds that reconsideration of the court's findings regarding the likelihood of confusion between the two marks is not warranted.

### D. The Balance of Hardships and Public Interest

In granting the preliminary injunction, the court found that both "the balance of equities favors defendants as the trademark owners because TLS is allegedly infringing a federally registered trademark" and "that an injunction protects the public interest in avoiding consumer confusion from competing uses of a federally registered trademark." Doc. #41.

TLS now argues that the court erred in its findings because the injunction will cause TLS a significant hardship from having to rebrand the company. Further, TLS argues that the public interest disfavors an injunction in this action because TLS will not be able to sell its products to the public. The court disagrees.

First, the injunction does not prevent TLS from selling its products because each TLS product has its own product trademark and the injunction only prevents TLS from using the TITANESS service mark. Second, these same arguments were raised by TLS in their opposition to the motion for a preliminary injunction and there is no new evidence or an intervening change in law that would warrant reconsideration. Accordingly, the court shall deny TLS' motion for reconsideration.

///

### III. Stay Pending Appeal

As an alternative to reconsideration, TLS argues that the court should stay the preliminary injunction order pending TLS' already filed appeal. Pursuant to Federal Rule of Appellate Procedure, "[a] party must ordinarily move first in the district court for . . . a stay of the judgment or order of a district court pending appeal." FED. R. APP. P. 8(a)(1)(A).

The court has reviewed the documents and pleadings on file in this matter and finds that a stay of the court's preliminary injunction order pending appeal is appropriate in this action. First, TLS has already filed an appeal of this court's order. *See* Doc. #49. Second, the court notes that it will take time for TLS to comply with the court's order as they will have to change its sales and marketing materials, along with its company identification. Therefore, the court shall grant TLS' motion to stay the preliminary injunction order. However, in order to alleviate any harm to the defendants that may occur by the pending appeal, the court shall require TLS to post a bond in this action. *See* FED. R. APP. P. 7 ("In a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal.").

A district court has discretion to determine the amount of bond required, if any. *See Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009). In determining whether to require a bond, a court shall include an explanation for its exercise of discretion. *See Language Line Services, Inc. v. Language Services Assoc., Inc.*, 500 Fed. Appx. 678, 682 (9th Cir. 2012). A district court may evaluate several factors for determining whether to impose a bond, including: (1) the appellant's financial ability to post a bond; (2) the risk that appellant would not pay the costs if it loses the appeal; and (3) an assessment of the likelihood that appellant will lose on appeal and thus be liable for costs. *Figure Eight Holdings, LLC v. Dr. Jays, Inc.*, 2913 U.S. App. LEXIS 15377, *2 (9th Cir. 2013).

Here, although this issue was not addressed or briefed by the parties in the underlying motions, the court finds that a bond in the amount of $10,000 is appropriate in this action. First, the

6

court finds that TLS has the ability to post a bond in this amount as TLS has proffered evidence of its sales figures in its various pleadings. Second, as addressed above in denying the motion for reconsideration, the court finds that TLS is unlikely to win on appeal and thus, TLS is likely to be liable for the costs associated with the appeal. Finally, the court finds that $10,000 is an amount sufficient, but not greater than necessary, for the costs of the appeal based on the parties and issues involved. Therefore, the court shall require TLS post a bond in the amount of $10,000 to cover the costs associated with the appeal.

**IV.   Order to Show Cause**

In response to the TLS's motion for reconsideration, defendants filed the present motion for an order to show cause. *See* Doc. #54. In light of the court's ruling to stay this action pending appeal, and the issuance of the bond, the court shall deny defendants' motion for an order to show cause without prejudice.

IT IS THEREFORE ORDERED that plaintiff's motion for reconsideration, or in the alternative, for a stay of the injunction pending appeal (Doc. #42) is GRANTED in accordance with this order. The underlying preliminary injunction order (Doc. #41) is STAYED pending appeal.

IT IS FURTHER ORDERED that plaintiff shall post a bond in the amount of ten thousand dollars ($10,000.00).

IT IS FURTHER ORDERED that defendants' motion for an order to show cause (Doc. #54) is DENIED.

IT IS SO ORDERED.

DATED this 31st day of January, 2014.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE